UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| TREMAINE CARROLL, | Case No. 1:25-cv-00080-EPG (PC) |
|---|---|
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTIONS TO PROCEED *IN FORMA PAUPERIS* |
| v. | |
| SEAN DIDDY COMBS, *et al.*, | (ECF Nos. 4, 7) |
| Defendants. | OBJECTIONS, IF ANY, DUE WITHIN 30 DAYS |

Plaintiff Tremaine Carroll is a state prisoner proceeding *pro se* in this civil rights action filed under 42 U.S.C. § 1983 on September 18, 2024. (ECF No. 1).[1] Plaintiff's complaint describes events spanning from 1996 to 2024, including Sean "Diddy" Combs' involvement in her criminal case and prison housing placement, various allegations of assault and improper treatment by inmates and correctional officers, and a direction from prison authorities to impregnant another inmate.

Before the Court are two motions to proceed *in forma pauperis* (IFP): Plaintiff's "Petition for 90-day extension for IFP and/or filing fee, preliminary injunctive relief, temporary restraining order, federal witness protection, appointment of counsel" (ECF No. 4) and Plaintiff's "Request to Proceed without Prepayment of Filing Fees" (ECF No. 7).

---

[1] This case was transferred from the Central District of California to this district on January 17, 2025. (ECF No. 11, 12).

1

Because Plaintiff had at least three "strikes" under 28 U.S.C. § 1915(g) prior to filing this action and has not sufficiently alleged imminent danger of serious physical injury connected to claims asserted in the case, the Court finds that Plaintiff is not eligible to proceed without prepayment of fees. Accordingly, the Court will recommend that Plaintiff's motions to proceed IFP be denied and that Plaintiff be required to pay the $405 filing fee in full if she wants to proceed with the action.

Plaintiff can file objections—**not to exceed 15 pages in length**—within 30 days.

## I.  THREE-STRIKES PROVISION OF 28 U.S.C. § 1915

Pertinent here is the "three-strikes provision" of 28 U.S.C. § 1915:

> In no event shall a prisoner bring a civil action . . . under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). In determining whether a dismissal counts as a "strike" under § 1915(g), "the reviewing court looks to the dismissing court's action and the reasons underlying it. . . . This means that the procedural mechanism or Rule by which the dismissal is accomplished, while informative, is not dispositive." *Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013) (internal citation omitted). The Ninth Circuit has "interpreted the final form of dismissal under the statute, 'fail[ure] to state a claim upon which relief may be granted,' to be essentially synonymous with a Federal Rule of Civil Procedure 12(b)(6) dismissal." *Id.* (alteration in original).

A court may raise § 1915(g)'s bar *sua sponte*. *Ray v. Lara*, 31 F.4th 692, 696 (9th Cir. 2022).

## II.  ANALYSIS

### A. Strikes

Plaintiff filed this action on September 18, 2024. (ECF No. 1). The Court takes judicial notice of the following district court cases, each of which counts as a "strike":

(1) *Carroll v. Brown, et al.*, No. 2:12-cv-02584-TLN-DAD (PC) (E.D. Cal.) (dismissed September 26, 2013, as duplicative);[2]

(2) *Carroll v. Virga, et al.*, No. 2:12-cv-01327-KJN (PC) (E.D. Cal.) (dismissed January 6, 2014, for failing to state a claim and then failing to file an amended complaint when given leave to amend);[3]

(3) *Carroll v. Knipp*, et al., No. 2:13-cv-00215-LKK-CKD (E.D. Cal.) (dismissed January 9, 2014, for failure to exhaust administrative remedies apparent from the face of the complaint, which was filed the same day as the alleged incident);[4]

(4) *Carroll v. California, et al.*, No. 3:15-cv-01722-LAB-WVG (PC) (S.D. Cal.) (dismissed October 9, 2015, for failure to state a claim);

(5) *Carroll v. Paramo*, No. 3:16-cv-01718-CAB-JLB (PC) (S.D. Cal.) (dismissed September 1, 2016, for failure to state a claim).

The Court's review of the above records reveals that on at least three occasions, lawsuits filed by Plaintiff have been dismissed on the ground that they were frivolous or malicious or failed to state a claim upon which relief may be granted.

The Court also takes judicial notice of a recent decision of this Court finding Plaintiff subject to three-strikes provision of Section 1915(g) and denying Plaintiff's motion to proceed *in forma pauperis*: *Carroll v. California*, No. 1:24-CV-00627 JLT EPG (PC), 2025 WL 637072, at *1 (E.D. Cal. Feb. 27, 2025).

---

[2] Duplicative action is considered frivolous or malicious under § 1915. *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995).

[3] "[W]hen (1) a district court dismisses a complaint on the ground that it fails to state a claim, (2) the court grants leave to amend, and (3) the plaintiff then fails to file an amended complaint, the dismissal counts as a strike under § 1915(g)." *Harris v. Mangum*, 863 F.3d 1133, 1143 (9th Cir. 2017); *see also O'Neal v. Price*, 531 F.3d 1146, 1156 (9th Cir. 2008) (dismissal for failure to state a claim and another ground counts as a strike when it is clear from the court's reasoning that it considers failure to state a claim to be a fully sufficient condition to dismiss the action).

[4] *See El-Shaddai v. Zamora*, 833 F.3d 1036, 1044 (9th Cir. 2016) (holding that a dismissal for failure to exhaust administrative remedies counts as a strike dismissal under § 1915(g) if the failure to exhaust is clear from the face of the complaint); *Kelly v. Elit*, No. 1:18-cv-00019-DAD-SAB, 2018 WL 1905667, at *2 (E.D. Cal. Apr. 23, 2018) ("[I]f a case is dismissed because the failure to exhaust was clear on the face of the complaint, and no outside evidence was considered in reaching that determination, the dismissal would count as a strike.").

Therefore, the Court finds that Plaintiff is precluded from proceeding IFP in this action unless she demonstrates she meets the "imminent danger" exception.

### B. Imminent Danger

Because Plaintiff had at least three "strikes" prior to filing this action, Plaintiff is precluded from proceeding IFP unless Plaintiff was, at the time the complaint was filed, in imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

#### 1. Legal Standards

The availability of the imminent danger exception "turns on the conditions a prisoner faced at the time the complaint was filed, not at some earlier or later time." *Andrews v. Cervantes*, 493 F.3d 1047, 1053 (9th Cir. 2007). "Imminent danger of serious physical injury must be a real, present threat, not merely speculative or hypothetical." *Blackman v. Mjening*, No. 1:16-CV-01421-LJO-GSA (PC), 2016 WL 5815905, at *1 (E.D. Cal. Oct. 4, 2016). To meet his burden under § 1915(g), Plaintiff must provide "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir. 2003). "[V]ague and utterly conclusory assertions" of imminent danger are insufficient. *White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir. 1998). The "imminent danger" exception is available "for genuine emergencies," where "time is pressing" and "a threat . . . is real and proximate." *Lewis v. Sullivan,* 279 F.3d 526, 531 (7th Cir. 2002).

Additionally, there is a nexus requirement between the danger alleged and the claims asserted: "[t]o qualify for the § 1915(g) imminent danger exception, a three-strikes prisoner must allege imminent danger of serious physical injury that is both fairly traceable to unlawful conduct alleged in his complaint and redressable by the court." *Ray*, 31 F.4th at 701. Because Plaintiff is *pro se*, in making the imminent danger determination, the Court must liberally construe Plaintiff's allegations. *Andrews*, 493 F.3d at 1055.

#### 2. Summary of Plaintiff's Complaint

Plaintiff alleges she is a transwoman in her 27th year of false imprisonment. (ECF No. 1 at 1.) She states she was improperly sentenced to 25-to-life, while the person she was accused

of aiding got probation. (*Id.*) Plaintiff sues Sean "Diddy" Combs, CDCR, Kathleen Allison, Marcus Pollard, Mike Pallares, Gavin Newsome, MCSP Warden, CCWF Warden, Madera County D.A., L.A. County Juvenile Probation Department and staff, Joseph Goethals Legal, The Justice Firm (including Joseph Virgillio, Christopher Darden, Nelson Hunt), AW De La Cruz, KVSP Warden, Sgt. Watters, C/O Mbah, Barrett, Elie Miller, Marc Lewinstein, Sgt. Brown, Sgt. Contreras, Sgt. Homes, Sally Stokes, Child Protective Services, CIW Warden, Department of Children and Family Services, YouTube, Dailymail, CBS, Fox, The Jumper, Shaderoom, Reddit, and Doe Defendants. (*Id.* at 1–2.)

Plaintiff alleges that in 1996, after being released from California Youth Authority, Plaintiff was introduced to Bad Boy CEO Sean "Diddy" Combs, Biggie Smalls, and others. Plaintiff alleges that Combs drugged and assaulted Plaintiff. Plaintiff also alleges that she was molested by her stepmom from ages 5–13 and by L.A. County Juvenile Probation Staff at several camps.

In December 1996, Plaintiff was falsely arrested for robbery and Defendant Combs hired an attorney to get it dismissed. However, Plaintiff was returned to custody where she learned CDCR was not only falsely labeling her a sex offender, but also falsely claiming that one of the two alleged victims was a minor. Plaintiff alleges she suffered physical and sexual abuse from staff and inmates as a result of improper sex-offender designations.

Plaintiff also alleges that on September 10, 1998, Plaintiff's bail was revoked for no reason. Plaintiff was found guilty of aiding grand theft property and improperly sentenced to 25-to-life, after Plaintiff's attorney refused to bring up Plaintiff's childhood trauma.

Plaintiff entered CDCR in December 1999 and was falsely labeled a child molester/sex offender, which subjected Plaintiff to physical, sexual, and psychological abuse by staff and inmates.

In 2018 to 2019, Plaintiff had to allow Dr. Claybaugh at Salinas Valley State Prison to rape her in order to start gender dysphoria treatment.

Later at Richard J. Donovan (RJD) in San Diego, Plaintiff was sexually abused by Sgt. Godinez and Dr. Calderon.

While housed at RJD, Plaintiff was left handcuffed in her wheelchair for three days. This led to multiple lawsuits, which resulted in a restraining order against CDCR for Plaintiff.

RJD staff falsified RVRs and had Plaintiff busted in the head with a boulder that shouldn't have been on any prison yard.

Plaintiff was again falsely imprisoned in solitary confinement when RJD hiring authority approached Plaintiff with a cellphone and phone number. Plaintiff called the number and it was Sean "Diddy" Combs telling Plaintiff "Marcus Pollard is family. Leave solitary confinement and its all good." Defendant Pollard told Plaintiff they needed her to go back to A-facility with Suge Knight and get all the information she could on the murder of Tupac Shakur. Plaintiff wrote a song for the documentary that Nick Cannon was supposed to be doing. Combs then told Plaintiff he needed her to find somebody to kill Suge Knight and he would pay $100,000.

In January 2021, SB132 was enacted by Governor Newsom. Defendant Combs asked Plaintiff if she wanted to go to the women's prison. Plaintiff said no, but Combs told Plaintiff he was plugged in with Kathleen Allison so he would make that happen, but Plaintiff could never speak on what he did to Plaintiff and Plaintiff "had to make that happen with Suge Knight."

A few months later, Plaintiff had a video call with Kathleen Allison and the Warden regarding Plaintiff's transfer to the women's prison in spite of the "R" suffix, but that Plaintiff would owe Allison a favor.

On August 26, 2021, Plaintiff was transferred to the women's prison in Central California Women's Facility (CCWF) in Chowchilla. There were no condom dispensers in the dayroom. Plaintiff filed a discrimination grievance that night, and at least 20 more over the time Plaintiff was there.

In late 2021/early 2022, the acting warden called Plaintiff to the "BPH" room and forced Plaintiff to perform oral sex on him in exchange for not sending Plaintiff back to the men's prison.

Months later, Officer Greg Rodriguez forced Plaintiff to perform oral sex on him.

6

Later, Plaintiff and Latasha Brown were thrown in solitary confinement with CCWF claiming that Latasha Brown was pregnant with twins by Plaintiff and Plaintiff kicked the babies out of her and they had a ritualistic burial for them in the yard.

The next day Latasha Brown was moved to CIW under the guise that she was "re-pregnant" with twins although Latasha Brown cannot get pregnant, but has a mental health condition that causes her mind, body, and soul to mimic pregnancies.

While in solitary confinement, Lt. Rodriguez and Lt. Ramires talked to Plaintiff privately to say that they were aware of Plaintiff's friendship with inmate Johnetta Ross, who had been trafficked among many CCWF staff. They told Plaintiff that Kathleen Allison wanted Plaintiff to get closer to Ross. Plaintiff was released from solitary confinement in May 2023, and maintained communication with Ross. Lt. Ramires told Plaintiff that Kathleen Allison was calling in a favor, and wanted Plaintiff to get inmate Ross pregnant to help end SB132 and go after Newsom. They'd help Plaintiff and Ross get free and take care of them and the baby.

About a month later, Ross was released to Facility B. Officer Bruffet told Plaintiff "I knew the price I'd previously paid" to c/o Bruffet $5,000 to move two inmates in with Plaintiff. Plaintiff paid the $5,000 like before, even though Plaintiff filed multiple grievances on this whole situation.

Plaintiff's medical file was manipulated and doctored to move Plaintiff in with Ross. Plaintiff went from permanent wheelchair/mobility impaired to no mobility devices, although Plaintiff was allowed to keep the wheelchair.

In September 2023, multiple correctional officers and the warden started an investigation on Ross being pregnant by Plaintiff, but did not separate them. At this time, Plaintiff had been on medications that killed Plaintiff's ability to get an erection or to produce sperm cells for over five years.

Later another person sexually assaulted Plaintiff and claimed that Plaintiff sexually assaulted her. Plaintiff was charged, but she wasn't. The difference was that Plaintiff is black and born male, and she is white and born female. Sergeant Brown and Contreras were the

investigators of the case and ordered the examiner not to collect any evidence from all the places that Bennett licked, sucked, and touched Plaintiff.

Defendant Cecilia Williams said Plaintiff snatched her and sexually assaulted her for filing a false police report.  When AVSS showed she entered Plaintiff's room, she changed her story when being threatened with filing a false police report and being out of bounds.

On AVSS, Plaintiff was assaulted once by former Officer Haynes as well as several others.  The only one who had assault charges filed against them was inmate Ross.

Several Defendants were supposed to represent inmate Ross, but stole Plaintiff's unpublished book about Defendant Combs and Plaintiff's experience, and stole Plaintiff's $402 filing fee for another case.

Defendant Joseph Goethal and the Justice Firm used unethical trickery to get Plaintiff to sign substitution of attorney agreements.  Joseph Goethals told presentencing attorneys he was handling Plaintiff's criminal case pro bono while telling Plaintiff he was taking it on contingency.

On February 13, 2024, inmate Ross tested positive for pregnancy and was transferred to CIW with three documented enemies where she was falsely imprisoned in the psychiatric inpatient program against her will.

On June 22, 20204, Ross gave birth to her son "Amazing Gift Ross."  With Kathleen Allison out of the way, Plaintiff had no protection.  Plaintiff had a DRB hearing in which Plaintiff was not able to present a defense.

On April 19, 2024, Plaintiff was the victim of unnecessary excessive use of force by CCWF staff who kidnapped Plaintiff and took Plaintiff to KVSP, the worst prison in CDCR.

On April 20, 2024, c/o Reyes and c/o Kaur sexually assaulted Plaintiff at gunpoint.  Plaintiff had a seizure after falling out of a wheelchair when they failed to properly secure Plaintiff on a state vehicle.  On the same state vehicle, Plaintiff was sexually assaulted at gunpoint by c/o Estrada and Moreno.

On July 22, 2024, CCWF staff gave Plaintiff a bottle of alcohol in a water bottle with date rape drugs and tried to kill Plaintiff.

### 3. Evaluation of Imminent Danger

Plaintiff's complaint does not meet the exception for imminent danger.

To begin with, most of the facts in Plaintiff's complaint, to the extent they can be understood, concern past conduct going back to 1990s, including that she was previously assaulted by numerous inmates and officers, and hired to kill certain individuals. These past events do not indicate future imminent danger. *See, e.g.*, *Carroll v. California*, No. 1:24-CV-00627 JLT EPG (PC), 2025 WL 637072, at *1 (E.D. Cal. Feb. 27, 2025) ("To the extent Plaintiff asserts fear of harm based upon past experiences in custody, such do not mandate a determination that she was in imminent danger at the time of filing the complaint in this action.").

To the extent Plaintiff alleges existence of imminent danger in her "Petition for (90) extension for IFP and/or filing fee," (ECF No. 4), they concern other inmates rather than Plaintiff herself. For example, Plaintiff alleges that Marcus Curry is afraid that "CDCR green wall is going to have [Curry] killed for not killing [Plaintiff]." (*Id.* at 7). Plaintiff also alleges that another inmate, Johnetta Ross, and Amazing Gift Ross and their family members fear for their lives. (*Id.* at 4). However, Plaintiff may not pursue claims on behalf of anyone else. *Simon v. Hartford Life, Inc.* 546 F.3d 661, 664 (9th Cir. 2008) ("[T]he privilege to represent oneself *pro se* provided by § 1654 is personal to the litigant and does not extend to other parties or entities . . . . [C]ourts have routinely adhered to the general rule prohibiting *pro se* plaintiffs from pursuing claims on behalf of others in a representative capacity.").

To the extent Plaintiff refers to her own future danger in her motion, it is not specific and not tied to any claim in the case.

Plaintiff also alleges that "there is nowhere in CDCR to safely house Plaintiff." (ECF No. 4 at 4). However, this concern is not tied to any claim in the case. It is thus not fairly traceable to unlawful conduct alleged in the complaint and is not redressable by the Court.

Accordingly, because Plaintiff is a "three-striker" and does not satisfy the exception for allegations of imminent danger connected to her claims, the Court will recommend that Plaintiff be required to pay the $405 filing fee in full if she wants to proceed with the action.

### III. CONCLUSION AND RECOMMENDATIONS

The Court concludes that under § 1915(g) Plaintiff may not proceed *in forma pauperis* in this action.

In addition, IT IS RECOMMENDED that:

1. Plaintiff's "Petition for 90-day extension for IFP and/or filing fee, preliminary injunctive relief, temporary restraining order, federal witness protection, appointment of counsel" (ECF No. 4) be DENIED IN PART to the extent it seeks leave to proceed *in forma pauperis*;
2. Plaintiff's "Request to Proceed without Prepayment of Filing Fees" (ECF No. 7) be DENIED.
3. Pursuant to 28 U.S.C. § 1915(g), Plaintiff be directed to pay the $405.00 filing fee in full if she wants to proceed with this action.
4. Plaintiff be advised that failure to pay the filing fee in full will result in the dismissal of this case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

**Objections, if any, shall <u>not</u> exceed 15 pages and may not include exhibits. Any pages filed in excess of the 15-page limit may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).**

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).
IT IS SO ORDERED.

Dated: **May 1, 2025**         /s/ Erica P. Grosjean
                               UNITED STATES MAGISTRATE JUDGE